## UNION INDEMNITY CO. v. COLORADO NAT. BANK.

### No. 712.

Court of Civil Appeals of Texas. Eastland.
Oct. 31, 1930.

Rehearing Denied Dec. 5, 1930.

Cox & Hayden, of Abilene, for appellant.

L. W. Sandusky and Thos. R. Smith, both of Colorado, for appellee.

### FUNDERBURK, J.

J. E. Root, being under contract to construct a public school building in Mitchell county, made an arrangement with The Colorado National Bank to advance money from time to time to meet the pay rolls for labor and material. After some advancements had been made, the bank, being of opinion that the contractor would be unable to perform his contract for the completion of the building, notified F. C. Olds, his representative, having charge of the work of construction and of paying the bills for labor and materials, that it would no longer advance funds for such purpose, unless payment of same was guaranteed by Union Indemnity Company. The last named company was the surety on the bond of said contractor to guarantee performance of the building contract. After a telephone conversation between said Olds and Couch & Morrow, of Abilene, the agents of said Union Indemnity Company, who executed the bond for Root, Olds received a telegram signed "Couch & Morrow, Agents," reading: "State agent bonding company authorizes continuation work and guarantees pay-roll." Upon receipt of said telegram, Olds submitted same to the bank, and upon the faith thereof the bank made two advancements of money to take care of pay rolls for labor and materials, aggregating $1,300. Subsequently, Root acknowledged default and the work of constructing the schoolhouse was taken over by the school authorities and completed under some other arrangement. After the completion of the building and the payment of the costs thereof, not including any reimbursement of the bank for said $1,300, there was a balance of $284.34 due on the contract, which was paid over to and accepted by said Union Indemnity Company. The reason such payment was made to Union Indemnity Company instead of the contractor, if material, does not appear from the record.

The Colorado National Bank brought this suit against Union Indemnity Company, seeking a recovery of the amount of said $1,300, which had been advanced as aforesaid, after receipt of said telegram.

In addition to the foregoing facts, alleged with more elaboration than above stated, plaintiff further alleged other more or less pertinent facts as follows: That Root, the contractor, was insolvent; that the occasion for notifying Olds, the agent of Root, that plaintiff would no longer make advancements, unless "payment of same was guaranteed by defendant," arose from the fact of its "becoming apparent that the said J. E. Root, contractor, would be unable to complete said building and perform said contract in accordance with the terms thereof, and for the contract price, thereby rendering defendant liable for the penalty of said bond." That, after such notice, "F. C. Olds, acting for and in behalf of said J. E. Root, notified Couch &

Morrow, agents of defendant * * * of plaintiff's refusal to advance further funds." "That * * * Couch and Morrow then and there being the duly authorized agents of defendant and well knowing that plaintiff would rely upon the same, sent or caused to be sent" said telegram. "That said telegram was sent * * * for the purpose of and with the full knowledge that it would be used by the said F. C. Olds, acting for and in behalf of the said J. E. Root as the basis of inducing plaintiff to advance further funds to the said J. E. Root for the continuation of said work and the completion of said contract." It was further alleged, substantially, that defendant and its state agent authorized Couch and Morrow to send said telegram, and that "for and in consideration of the advancement by plaintiff of additional funds to the said J. E. Root to enable him to perform said contract and complete said work, thereby saving the defendant from loss upon said bond, the defendant then and there guaranteed the payment of all sums to be thereafter advanced by plaintiff for the continuation of the work upon said contract and for the payment of the pay-rolls for labor and material incident to the performance of said contract."

There were alternative allegations to the effect that if Couch and Morrow were not specifically authorized "to guarantee the payment of money so advanced," then they had been given such apparent authority as to estop the defendant from claiming such want of authority, etc.

The defendant, in addition to a general demurrer, urged certain special exceptions to the plaintiff's pleading, one being to the effect that the alleged contract of guaranty was one to which plaintiff was not a party, and another was that there was no allegation that plaintiff gave notice to defendant that it was accepting the guaranty or was relying upon the same for payment of said pay rolls. By a general denial the defendant joined issue upon all facts essential to a recovery by plaintiff.

Two questions were submitted to the jury, which, with their answers, are as follows:

"Issue No. 1: Were Couch & Morrow acting within the apparent scope of their authority when they sent the telegram to Olds as testified to herein? Answer Yes.

"Issue No. 2: Did Couch & Morrow, or the defendants herein, have notice that the telegram in evidence herein would be used by Olds himself, or from any other person to secure the money for the continuation of the work, material and the pay-rolls on the Spade school contract? Answer Yes."

The court gave judgment for plaintiff upon the findings of the jury, from which action defendant has appealed.

Appellant challenges the correctness of the judgment and other proceedings of the trial

court in a number of different respects. We have found it difficult to pass upon the questions presented because of our inability to reach a satisfactory conclusion as to the precise nature of the cause of action upon which plaintiff sought recovery. We have had no difficulty in satisfying ourselves that, unless plaintiff's pleadings are to be interpreted as alleging a cause of action upon a contract to which the plaintiff and defendant were parties, no cause of action was alleged. But, regarding the suit as one upon contract, the provisions of the contract are not alleged with such definiteness and certainty as to enable us to determine its true nature, and to properly pass upon the questions presented in reference thereto.

If a cause of action upon contract was sought to be alleged, was it a contract consisting of an offer of plaintiff to make further advancement upon the condition that defendant would guarantee repayment, which offer was communicated to the defendant through Olds, as its agent or means of communication, and accepted by defendant by addressing the telegram in question to Olds, with the purpose that he deliver or communicate same to plaintiff? Or, in the light of the facts alleged, was the contract one that was formed by an offer from defendant evidenced by the telegram, which defendant expressly or impliedly authorized Olds for it to communicate to the plaintiff, to guarantee payment of such advancements as plaintiff should make, which, being the offer of a promise for an act, was accepted by the bank by its act in making the advancement? The pleading, it seems to us, is about equally susceptible to either construction, and about equally as uncertain which is the correct one. In the light of the entire record we would feel justified in construing plaintiff's pleading to allege a contract consisting of an offer by plaintiff to make further advancements, upon condition that defendant guarantee repayment, and an acceptance of such offer by the telegram, were it not for the allegations that Olds, in notifying the defendant's agents, was "acting for and in behalf of the said J. E. Root," and that in communicating the telegram to plaintiff he was "acting for and in behalf of the said J. E. Root." If there was any contract under the theory last mentioned, then Olds was the agent or means of communication of both the offer and acceptance. If there was any contract under the other theory, then of necessity Olds was the agent or means of communication employed by the defendant. The phrase, "acting for and in behalf of said J. E. Root," as applied to Olds in a number of different places in the record, suggests that same may have been used as a description of him (descriptio personae), rather than as an assertion that in the particular matter he was acting for Root. But we are not warranted in assuming such to be the case, and basing a construction of the pleading upon such assumption.

It is axiomatic that one cannot recover when his pleading alleges one contract and the only proof shows a materially different contract. McAlister v. Bivings (Tex. Civ. App.) 29 S. W.(2d) 853, and authorities cited. A pleading seeking to allege a cause of action upon a contract which is so uncertain as to the material provisions of the contract that it cannot be said upon which of two materially different contracts recovery is sought, is, as a matter of law, insufficient to support a judgment. In other words, it is subject to general demurrer.

We are also of opinion that the special verdict of the jury is insufficient to support the judgment. Issue No. 1 was wholly immaterial, whether the telegram was an offer or was the acceptance of an offer. The testimony was undisputed that Couch and Morrow, as agents for defendant, had no authority to guarantee payment of the advances. Or, if they had such authority there was no evidence of it, and the plaintiff at any rate had knowledge they claimed to have no such authority, thus eliminating any question of apparent authority not actually possessed. As has already been said, if any contract existed, Olds was the special agent of one or both of the parties in the formation thereof, and, in so far as he may have been the special agent or representative of plaintiff, notice to him was notice to the plaintiff. The testimony of Larramore that, as representative of Couch and Morrow he told Olds over the telephone that "the agency had no authority in the matter at all," and that the home office or the Dallas office would have to be consulted, was undisputed. Besides, the telegram itself did not purport to be upon the authority of Couch and Morrow, but of the state agent. Defendant's own witness, Larramore, made out proof of the fact that the state agent did authorize the sending of the telegram, thereby making it his own act. Consequently, the only question involved of the authority of an agent would have been the authority of the state agent. That question, we are inclined to think, would not be one of apparent authority as distinguished from an actual though implied authority. Issue No. 1 was therefore insufficient to form any support for the judgment.

Issue No. 2, if material, was subject to the objection made by appellant and urged upon this appeal. A finding as to whether Couch and Morrow or the defendant had notice that the telegram would be used by Olds himself or from any other person (whatever the latter may mean) to secure the advancements would not be equivalent to a finding that the defendant had such notice. Notice to Couch and Morrow, if material, was not notice to the defendant, since, as already ob-

260

served, Couch and Morrow, under the undisputed evidence had no authority in the matter, and hence it does not follow that notice to them was notice to the company. If there was a material issue of notice, then the court erred in submitting issue No. 2 in the form it was submitted.

But we fail to see that any issue of notice was presented. If there was no contract between the plaintiff and defendant, then there was no liability dependent solely upon the fact that the defendant may have had notice that Olds would use the telegram to procure advancements. Knowledge on the part of defendant that the telegram would be exhibited by Olds to the bank for the purpose of procuring the advancements to be made would, no doubt, be competent evidence tending to show that defendant recognized Olds as the agent of plaintiff in communicating an offer to which the telegram was an acceptance, or tending to show an intent that Olds communicate the telegram to the bank as an offer, to which the act of the bank in making the advancements may have been an acceptance. But the finding of a jury upon a purely evidentiary matter as distinguished from a determinative issue of fact is insufficient to support a judgment as this court had occasion to hold in Ratcliffe v. Ormsby, 298 S. W. 930. Whatever the contract which plaintiff's pleading attempted to allege, there was an issue of fact as to the existence of such contract which was not submitted and, of course, not found by the jury.

The judgment, as we conclude, being supported by neither the pleadings nor the verdict of the jury, the same, in our opinion, should be reversed and the cause remanded, and it is accordingly so ordered.